696 P.2d 223

**WHITE MOUNTAIN APACHE TRIBE
dba Fort Apache Timber Co.,
Petitioner Employer,**

**Aetna Insurance Company, Petitioner
Insurance Carrier,**

v.

**INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,**

**Dernie Bead, Respondent Employee.**

**No. 1 CA–IC 3160.**

Court of Appeals of Arizona,
Division 1, Department C.

Feb. 21, 1985.

Robert C. Brauchli, Pinetop, for petitioner employer.

Bury, Moeller & Humphrey, P.A. by J. Michael Moeller, Marshall Humphrey, Tucson, for petitioner carrier.

Sandra A. Day, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Harlan J. Crossman, P.C. by Harlan J. Crossman, Phoenix, for respondent employee.

OPINION

JACOBSON, Chief Judge.

The sole issue raised in this review is whether the Industrial Commission of Arizona has jurisdiction to adjudicate the rights of an injured Indian worker, where the injury occurs on an Indian reservation and the employer is a wholly-owned entity of an Indian tribe.

The facts are not in dispute. The claimant, Dernie Bead, is an enrolled member of the White Mountain Apache Tribe and resides on the Fort Apache Indian Reservation located in northeastern Arizona. On December 3, 1979, he suffered an industrially-related crush injury to his left hand while employed by the Fort Apache Timber Company (FATCO). FATCO is wholly-owned by the White Mountain Apache Tribe and the accident occurred within the exterior boundaries of the Fort Apache Indian Reservation.

FATCO carried a workers' compensation policy issued by Aetna Insurance Company. This policy contained the following provisions:

8. Statutory Provisions—

Coverage A. The [insurance] company shall be directly and primarily liable to any person entitled to the benefits of the workmen's compensation law under this policy. The obligations of the company may be enforced by such person, or for his benefit by any agency authorized by law, whether against the company alone or jointly with the insured. Bankruptcy or insolvency of the insured or of the insured's estate, or any default of the insured, shall not relieve the company of any of its obligations under Coverage A.

\* \* \* \* \* \*

All of the provisions of the workmen's compensation law shall be and remain a part of this policy as fully and completely as if written herein, so far as they apply to compensation and other benefits provided by this policy and to special taxes, payments into security or other special funds, and assessments required of or

levied against compensation insurance carriers under such law.

Following his injury, the claimant filed a report of injury with the Industrial Commission, and the carrier accepted the claim by a Notice of Claim Status, also filed with the Commission. The employer, FATCO, also filed with the Commission an Employer's Report of Injury. During the processing of this claim, the Commission pursuant to A.R.S. § 23–1061(F) made an independent determination of the claimant's average monthly wage. Pursuant to the average monthly wage determination, full worker's benefits, required under Arizona law, were paid by the carrier until August 16, 1982, when the claimant was released to work.

On February 2, 1983, the carrier issued a Notice of Claim Status closing the claim as a scheduled 80% permanent impairment of the left upper extremity. This notice of claim status contained the following:

NOTICE TO CLAIMANT: If you do not agree with this notice, and wish a hearing on the matter, your written Request for Hearing must be received at either office of the Industrial Commission listed below within NINETY (90) DAYS after the date of mailing of this NOTICE, pursuant to A.R.S. § 23–941 and 23–947. *IF NO SUCH APPLICATION IS RECEIVED WITHIN THAT NINETY DAY PERIOD, THIS NOTICE IS FINAL.* (Emphasis in original.)

Pursuant to this notice, the claimant filed a request for hearing with the Industrial Commission contending either that he had sustained a greater than 80% permanent injury or that the injury should be treated as unscheduled. A hearing was set on this request. Prior to the hearing, both the employer and the carrier moved to dismiss the request for hearing, contending that the Industrial Commission of Arizona lacked jurisdiction over the employer and the carrier.

This motion was extensively briefed by all parties and on October 24, 1983, the administrative law judge issued an order denying the motion to dismiss. Following the denial and a request for review, both the carrier and FATCO sought review in this court of the order denying the motion to dismiss to resolve the jurisdictional issue.

As previously indicated, the sole issue presented by this review is whether the Commission, an administrative agency of the State of Arizona, may exercise jurisdiction to adjudicate the rights and obligations of the claimant, carrier and employer under the circumstances of this case.

In order to resolve this basic issue, we are required to determine:

1. Whether the sovereignty accorded Indian tribes precludes the state from exercising jurisdiction over that tribe.

2. Whether 40 U.S.C. § 290 allows the state to apply its workers' compensation laws within the exterior boundaries of an Indian reservation.

3. Whether, under the facts of this case, the employer has waived its sovereign immunity.

4. Assuming jurisdiction cannot be exercised over the employer, whether the State may exercise jurisdiction over the carrier.

The employer's basic contention is that principles of sovereign immunity preclude the State, through its administrative agency, the Industrial Commission, from exercising jurisdiction over the employer. We agree that the State of Arizona recognizes that Indian tribes located within its boundaries are to be accorded sovereign immunity. *Morgan v. Colorado River Indian Tribe,* 103 Ariz. 425, 443 P.2d 421 (1968) (holding that the State of Arizona lacked jurisdiction, on the basis of sovereign immunity, over the Colorado River Indian Tribe so as to be able to adjudicate a tort allegedly committed by that tribe outside tribal boundaries.) We also agree that sovereign immunity has been accorded subordinate tribal enterprises, and in particular, FATCO. *White Mountain Apache Indian Tribe v. Shelley,* 107 Ariz. 4, 480 P.2d 654 (1971).

The claimant does not seriously contend that FATCO is not entitled to be accorded sovereign immunity. Rather, he first argues that Congress by enacting 40 U.S.C. § 290, has carved out an exception to that doctrine in the area of workers' compensation. 40 U.S.C. § 290 provides in part:

State workmen's compensation laws; extension to buildings and works of United States.

Whatsoever constituted authority of each of the several States is charged with the enforcement of and requiring compliance with the State workmen's compensation laws of said States and with the enforcement of and requiring compliance with the orders, decisions, and awards of said constituted authority of said States hereafter *shall have the power and authority to apply such laws to all lands and premises owned or held by the United States of America by deed or act of cession, by purchase or otherwise, which is within the exterior boundaries of any State ....*

For the purpose set out in section 1 of this Act, [the first paragraph of this section] the United States of America hereby vests in the several States within whose exterior boundaries such place may be, insofar as the enforcement of State workmen's compensation laws are affected, the right, power and authority aforesaid .... (Emphasis added.)

Claimant argues that since the land underlying FATCO's operation is owned by the United States of America, albeit in trust for the White Mountain Apache Tribe, the provisions of 40 U.S.C. § 290 are applicable and allow the State of Arizona, through the Industrial Commission, to apply this state's workers' compensation laws to this injury.

In our opinion, the question of whether Arizona's compensation laws operate within the boundaries of an Indian reservation located in Arizona has been clearly answered by both this state's courts and the federal courts. In *Johnson v. Kerr-McGee Oil Industries, Inc.,* 129 Ariz. 393, 631 P.2d 548 (App.1981), appeal dismissed for want of substantial federal question, *Johnson v. Kerr-McGee Oil Industries,* 454 U.S. 1025, 102 S.Ct. 560, 70 L.Ed.2d 469 (1981), Division 2 of the Arizona Court of Appeals rejected arguments that simply because the alleged injury occurred within the exterior boundaries of an Indian reservation, the provisions of 40 U.S.C. § 290 were inapplicable. A like result was reached by the Ninth Circuit Court of Appeals in *Begay v. Kerr-McGee Corporation,* 682 F.2d 1311, 1319 (9th Cir.1982), which held:

The language of U.S.C. § 290 unambiguously permits application of state workers' compensation laws to all United States territory within the state. Claims by Indians against non-Indian employers are not matters of 'self-governance in purely intramural matters' sufficient to avoid the rule that Indians are subject to such federal laws of general application [citation omitted] and the exercise of state jurisdiction over such claims does not, even minimally, infringe upon or frustrate tribal self-government. [citation omitted]

The carrier and employer quickly point out that the employer in both these cases were non-Indian and therefore the conclusions drawn are not applicable to Indian employers. They conclude by urging the traditional concepts of "preemption" and "infringement" established by *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) and its progeny[1] be utilized when analyzing the applicability of state laws to Indian territories.

Given our singular lack of success in applying these concepts (*see White Mountain Apache Tribe v. Bracker, supra,* and *McClanahan v. State Tax Commission of Arizona, supra*) we decline to again attempt that type of analysis. Rather, we

---

1. *See White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980); *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 115 (1973); *McClanahan v. State Tax Commission of Arizona,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973).

are convinced that whatever 40 U.S.C. § 290 attempted to accomplish by making states' workers' compensation laws applicable to federal enclaves, it did not have the effect of abrogating the doctrine of sovereign immunity. *Roelofs v. United States*, 501 F.2d 87 (5th Cir.1974), rehearing denied, 511 F.2d 1402, cert. denied, 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (1975); *Watkins v. United States*, 479 F.Supp. 785 (D.S.Car.1979); *See Swatzell v. Industrial Commission*, 78 Ariz. 149, 277 P.2d 244 (1954).

■ We therefore hold that having recognized the sovereign immunity of the White Mountain Apache Tribe and FATCO, 40 U.S.C. § 290 has not abrogated that sovereign immunity.

We now turn to the claimant's argument that the employer and carrier have waived that immunity. The basis of waiver is grounded in the following acts of the employer and the carrier: (1) obtaining and entering into a contract for workers' compensation insurance which by its terms makes applicable the provisions of Arizona's compensation laws; (2) by the carrier filing acceptance of the claimant's claim with the Industrial Commission; (3) by the employer filing an Employer's Report of Injury with the Industrial Commission; (4) by the carrier paying benefits based upon a determination of average monthly wage made by the Industrial Commission; and (5) by the carrier advising the claimant by its Notice of Claim Status that the claimant's recourse was through the Industrial Commission of Arizona.

■ In analyzing the waiver argument, we start with the proposition that tribal immunity may be waived. *S. Unique Ltd. v. Gila River Pima Maricopa Indian Community*, 138 Ariz. 378, 674 P.2d 1376 (App.1983). However, such a waiver can-

not be implied, but must be unequivocally expressed. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). We have previously rejected the argument that 40 U.S.C. § 290, by its terms, abrogated sovereign immunity. We also reject the argument that this legislation, in the absence of an unequivocal expression of congressional intent to do so, waived the tribe's dependent sovereign immunity. *See Santa Clara Pueblo v. Martinez, supra.*

In this case the record is devoid of any express waiver by the tribe of its sovereign immunity. The claimant argues, however, that FATCO, by purchasing a policy of workers' compensation insurance, which by its terms is subject to the compensation laws of Arizona, has expressly waived its immunity at least to the extent of the insurance coverage. A similar argument was made and rejected in *Graves v. White Mountain Apache, Tribe Etc.*, 117 Ariz. 32, 570 P.2d 803 (App.1977). *Graves* involved the purchase by the tribe of a liability insurance policy which covered the negligence of FATCO in its business operations. The court refused to imply a waiver of sovereign immunity by such a purchase. Claimant seeks to distinguish *Graves* on two grounds: (1) that Congress by enactment of 25 U.S.C. § 123 [2] has authorized the purchase of the insurance involved here, a fact not alluded to in *Graves*, and (2) the policy by express terms makes applicable the provisions of Arizona's workers' compensation laws.

■ The existence of congressional authority for the tribe to purchase insurance under 25 U.S.C. § 123 can no more rise to the level of a waiver of sovereign immunity than the existence of 40 U.S.C. § 290. Nothing in 25 U.S.C. § 123 constitutes an unequivocal expression of legislative intent to waive sovereign immunity, and therefore

---

**2.** 25 U.S.C. § 123 provides:

**§ 123. Expenditure from tribal funds without specific appropriations**

No money shall be expended from Indian tribal funds without specific appropriations by Congress except as follows: Equalization of allotments, education of Indian children in

accordance with existing law, per capita and other payments, all of which are hereby continued in full force and effect: Provided, That this shall not change existing law with reference to the Five Civilized Tribes.
(May 18, 1916, ch. 125, § 27, in part, 39 Stat. 158.)

none can be implied. *Santa Clara Pueblo v. Martinez, supra.*

■ As to the contract provisions themselves, the applicability of Arizona's compensation laws are limited to "compensation and other benefits" provided by those laws. We see nothing in the contract provisions which expressly provide that the "compensation and other benefits" are to be adjudicated by the Industrial Commission. In absence of such a provision, nothing would justify us in finding an express waiver of immunity.[3]

■ The claimant also points to various acts of the carrier and the employer, FATCO, which on their face indicate an acquiescence in the exercise of Industrial Commission jurisdiction. This argument of "waiver by conduct" was answered in *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 513, 60 S.Ct. 653, 657, 84 L.Ed. 894, 899 (1940):

> It is a corollary to immunity from suit on the part of the United States and the Indian Nations in tutelege that this immunity cannot be waived by officials. If the contrary were true, it would subject the government to suit in any court in the discretion of its responsible officers. This is not permissible.

We therefore reject claimant's arguments on waiver.

Finally, the claimant argues that even if the Commission lacks jurisdiction over the employer, FATCO, it may exercise jurisdiction over the non-Indian carrier. We disagree.

■ It is clear that Article 18, § 8 of the Arizona Constitution which authorized the legislature to enact a workers' compensation law intended to regulate, as between an employer and its employees, the manner in which work-related injuries were to be compensated. *Pressley v. Industrial Commission*, 73 Ariz. 22, 236 P.2d 1011 (1951). Pursuant to this constitutional provision, the primary responsibility for providing compensation rests with the employer:

> ... compensation shall be required to be paid to any such workman, in case of his injury ... *by the employer* .... (emphasis added)

*See, Culver v. Industrial Commission*, 23 Ariz.App. 540, 534 P.2d 754, 757 (1975).

■ That the primary responsibility for providing compensation is the employer is made clear by A.R.S. § 23–961. This statute provides in part:

> A. *Employers* shall secure workers' compensation to their employees in one of the following ways:
>
> 1. By insuring ... the payment of such compensation with ... an insurance carrier authorized by the director of insurance to write workers' compensation insurance in this state.
>
> 2. By furnishing to the commission satisfactory proof of financial ability to pay the compensation directly in the amount and manner and when due as provided in this chapter. (emphasis added)

Moreover, the "employers" who are required to comply with the act are limited. Article 18 § 8 is limited by its terms to employers who employ "workmen engaged in manual or mechanical labor in all public employment whether by the state, or any political subdivision or municipality thereof as may be defined by law and in such private employment as the legislature may prescribe."

Pursuant to this constitutional provision, the legislature has defined employers subject to the act, by A.R.S. § 23–902 as:

> " ... the state, each county, city, town, municipal corporation, school district and every person who has in his employ any workmen ... regularly employed ..."

---

**3.** We note that Division 2, in the case of *Val/Del, Inc. v. Superior Court*, Ariz.(2 CA–SA 133, filed January 2, 1985) held that the Pascua Yaqui Tribe waived its sovereign immunity by entering into a contract containing an arbitration clause. It appears this waiver was based in part on 25 U.S.C. § 1300f(c), granting the State of Arizona the right to exercise civil jurisdiction within the boundaries of the Pascua Yaqui Tribal lands. 25 U.S.C. § 1300f(c) is not applicable to the White Mountain Apache Tribe.

■ Is the White Mountain Apache Tribe and its wholly-owned entity, FATCO, an "employer" within this definition? We believe not. We have previously held that because of the sovereign immunity enjoyed by FATCO, it could not be subject to the adjudicatory powers of the Commission. If this be true, it obviously is not a covered employer within the meaning of the Workers' Compensation Act. A similar result was reached in regard to the federal government. *Swatzell v. Industrial Commission, supra.*

Under A.R.S. § 23–921, the Commission only has the power to adjudicate "claims for compensation arising out of provisions of this chapter ..."

■ It has long been the law in Arizona that the Commission is without jurisdiction to adjudicate a "claim" arising out of an injury where the employer was not covered under the act. *Melendez v. Johns,* 51 Ariz. 331, 76 P.2d 1163 (1938); *Madrigal v. Industrial Commission,* 69 Ariz. 138, 210 P.2d 967 (1949). Since the Commission lacks jurisdiction to adjudicate claimant's "claim", it of necessity lacks jurisdiction over the insurer of that claim.[4]

■ The claimant has argued that if the Commission lacks jurisdiction, he is without a remedy. Both the employer and the carrier have alleged that the Apache tribal court is available to adjudicate the claimant's rights under the workers' compensation policy issued by the carrier. We need not, indeed cannot, here determine the jurisdiction of the tribal court, nor what law that tribal court may apply in adjudicating claimant's claim. Suffice it to say, a forum may be available to resolve this controversy.

The order of the Industrial Commission denying the motion to dismiss is set aside.

EUBANK, P.J., and OGG, J., concur.

---

4. The carrier has argued that A.R.S. § 23–963(2) which provides that all compensation policies shall be deemed to contain a provision "that jurisdiction of the employer shall be jurisdiction of the insurance carrier" also requires a holding that the Commission lacks "jurisdiction" over it, being unable to acquire "jurisdiction" over the employer. We decline to base our ruling on this interpretation of that statute.