MAY, J.
The Seminole Tribe of Florida (“tribe”) appeals an order denying its motion to dismiss based on sovereign immunity. It argues the trial court erred in failing to grant its motion to dismiss as a matter of law. We agree. We treat this appeal as'a petition for writ of certiorari, and grant the petition.
The plaintiff filed a complaint against the tribe for personal injuries resulting from a slip and fall in a restroom at the Seminole Hard Rock Hotel and Casino. The incident is alleged to have occurred on November 5, 2009. In her amended complaint, the plaintiff admitted the tribe is not subject to the civil jurisdiction of state courts unless its sovereign immunity is waived. Houghtaling v. Seminole Tribe of Fla., 611 So.2d 1235, 1239 (Fla.1993).
The plaintiff admitted the only way the tribe can waive sovereign immunity is by a duly enacted resolution of the Tribal Council in legal session. But, she maintained the tribe did so when it adopted, and the National Indian Gaming Commission approved, Resolution No. C-495-06 on July 10, 2006, a copy of which she attached as exhibit A. . The resolution revised the Seminole Tribal Gaming Code to authorize class 1, II, and III gaming. It did not include a waiver of sovereign immunity.[1]
On November 14, 2007, the tribe executed a compact with the State of Florida; which the plaintiff attached as exhibit B (“2007 compact”). It was executed by the chairman of the Tribal'Council. Part VI included a limited consént to suit, providing tort remedies for patrons who claim to be injured in the facility where the covered games are played.[2] The 2007 compact became effective in January 2008.
On July 3, 2008, the Supreme Court of Florida held “that the Governor lacked authority to bind the State to a compact that violates Florida law as th[e 2007 compact did].” Fla. House of Representatives v. Crist, 999 So.2d 601, 616 (Fla.2008). Nevertheless, the plaintiff maintained the tribe had waived its sovereign immunity.
The Seminole Tribal Gaming Commission approved another resolution, No. STGC-05-08-04, on May 20, 2008, consistent with the provisions of the 2007 compact, which the plaintiff attached as exhibit C. (This resolution was limited to the approval of rules for certain table games; it did not mention sovereign immunity.)
. On April 7, 2010, the tribe executed a limited waiver of sovereign immunity *1218 (“2010 compact”), which the plaintiff attached as exhibit D. The plaintiff attached a letter from,the United States Department of the Interior, approving the 2010 compact, as exhibit E. The letter recognized that the 2007 compact remained in effect under federal law. .
The tribe moved to dismiss the amended complaint for lack of subject matter jurisdiction. It asserted the 2007 compact was void, and no limited waiver of sovereign immunity was in effect at the time of the alleged injury in 2009. The tribe argued the immunity issue was properly presented in a motion to dismiss rather than a motion for summary judgment. Seminole Tribe of Fla. v. McCor, 903 So.2d 353, 357-58 (Fla. 2d DCA 2005).
The question of whether a court lacks subject matter jurisdiction over a claim because that claim is barred by tribal sovereign immunity is a threshold question that is properly presented by way of a motion to dismiss, rather than by a motion for summary judgment. A motion to dismiss for lack of subject matter jurisdiction is analogous to a motion to dismiss for lack of personal jurisdiction. See Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989).... Challenges to subject matter jurisdiction raised by Indian tribes asserting tribal immunity have regularly been made by way of motions to dismiss. See Seminole Tribe v. Houghtaling, 589 So.2d 1030, 1031 (Fla. 2d DCA 1991); Seminole Police Dep’t v. Casadella, 478 So.2d 470, 471 (Fla. 4th DCA 1985). We therefore conclude that it was proper for the trial court to consider the Tribe’s motion to dismiss with the accompanying affidavits and not appropriate to consider the motion for summary judgment.
McCor, 903 So.2d at 357. We have recently reiterated' the propriety of deciding immunity on a motion to dismiss. MMMG, LLC v. Seminole Tribe of Fla., Inc., 196 So.3d 438 (Fla. 4th DCA 2016).
At the hearing, the tribe argued that any waiver had to appear in an ordinance or resolution duly enacted by the Tribal Council in legal session. No ordinance or resolution expressly waiving sovereign immunity was in .effect at the time of .the 2009 incident. The 2007 compact was unenforceable against either the tribe or the State, according to Crist, notwithstanding federal recognition of the 2007 compact.
In support of its position, the tribe referred to section 285.710(2)(a), Florida Statutes, which provides that the 2007 compact invalidated by Crist “[was] not ratified or approved by the Legislature, is void, and is not in effect.” That provision became' effective June 15, 2009, Ch. 2009-Í70, § 1, Laws of Fla., prior to the plaintiffs alleged injury. The tribe argued the 2010 compact did not apply retroactively. Thus, no waiver of immunity existed, and the action had to be dismissed.
The tribe attached an affidavit of Andrew J. Bowers, Jr., to its motion to dismiss. Mr. Bowers was a tribe member, a Tribal Council member, and an attorney. He was familiar the tribe’s immunity from suit. He attested that the tribe had never consented to suit on the plaintiffs claim nor approved the waiver of its tribal sovereign immunity as between the plaintiff and the tribe..
Mr. Bowers attested that the Tribal Council permits its insurance carrier to voluntarily settle certain claims asserted against the tribe, but this system did not give anyone the right to sue, and did not waive the tribe’s sovereign immunity. While the 2010 compact provided a limited waiver of sovereign immunity arising after July 6, 2010, it was not retroactive and did not apply to the plaintiffs claim. He knew of no congressional act abrogating the *1219 tribe’s sovereign immunity for the plaintiffs claims.
He quoted from tribal ordinance C-01-95, enacted by the Tribal Council, and ratified by the United States Department of the Interior in 1995, which provides that ■the tribe and'its agents would be immune from suit “absent the clear, express and unequivocal consent of the Seminole Tribe of Florida or the clear, express and unequivocal consent of the United States Congress.” The only way the tribe could consent to waive its immunity from suit was through a resolution of the Tribal Council, sitting in legal session, specifically acknowledging the waiver and describing the purpose and extent of the waiver. The failure to contain such language would render the resolution ineffective to constitute a waiver.[3]
The tribe argued that Florida Rule of Civil Procedure 1.140(b) allowed consideration of the affidavit. The burden then shifted to the plaintiff to rebut the affidavit.
The plaintiff first responded that the Tribal Council waived tribal sovereign immunity when it adopted Resolution No. C-195-06 in 2006 and entered into the 2007 compact. The federal government continued to recognize that compact, and the Tribal Council had not rescinded or retracted it. Second, the plaintiff argued the issue of waiver was a factual question not subject to a motion to dismiss. Because the tribe continued to allow Class III gambling under the 2007 compact, and continued to escrow funds for the State, it had waived sovereign immunity. And last, the plaintiff argued additional discovery was needed.
The trial court reserved ruling, but after receiving memoranda and proposed orders from both sides, issued its own order denying the tribe’s motion to dismiss. It concluded that the issue was an inherently factual one. Mancher v. Seminole Tribe of Fla., Inc., 708 So.2d 327, 328-29 (Fla. 4th DCA 1998) (reversing order dismissing complaint based on sovereign immunity because challenge involved disputed factual questions).
From this order, the tribe has now appealed.
.We can review orders denying immunity under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(xi), but only if they are made as a matter of law. Because the trial court did not base its ruling on the law, but rather as a factual matter, we can only review the issue as a petition for writ of certiorari. McCor, 903 So.2d at 357-60 (granting petition for writ of certio-rari and quashing order denying motion to dismiss); Miccosukee Tribe of Indians v. Napoleoni, 890 So.2d 1152, 1154 (Fla. 1st DCA 2004) (issuing a writ of prohibition to preclude the trial .court from acting in excess of its jurisdiction); Casadella, 478 So.2d at 471 (granting petition for writ of certiorari and quashing trial court’s order denying a motion to dismiss).
Our supreme court has recognized that tribal sovereign immunity is different. It “involves complete immunity from suit.” Citizens Prop. Ins. Corp. v. San Perdido Ass’n, 104 So.3d 344, 353 n. 6 (Fla.2012). This is because the sovereign immunity provided to the tribe is illusory if the tribe is required to defend an action barred by the doctrine. We therefore treat this appeal as a petition for writ of certiorari. Fla. R. App. P. 9.040(c).
The petitioner’s burden is to establish that the trial court departed from *1220 the essential requirements of the law causing irreparable injury. State ex rel. Boyles v. Fla. Parole & Prob. Comm’n, 436 So.2d 207, 209-10 (Fla. 1st DCA 1983).
■Certiorari jurisdiction exists in this context because the inappropriate exercise of jurisdiction- by a trial court over a sovereignly-immune tribe is an injury for which, there is no adequate remedy on appeal. Tribal sovereign immunity, like the qualified immunity enjoyed, in civil rights cases by public officials, “in-volves ‘inmmnity from suit rather than a mere defense to liability,’ ” which is an “entitlement” that “ -is effectively lost if a case is erroneously permitted to go to trial.’ ”
McCor, 903 So.2d at 357-58 (emphasis in original)' (quoting Tucker v. Resha, 648 So.2d 1187, 1189 (Fla.1994)). Here, the tribe has met its burden.
In Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), the United States Supreme Court held:
Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers. This aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress. But “without congressional authorization,” the. “Indian Nations are exempt from suit.”
It is settled that a waiver of sovereign immunity “ ‘cannot be implied but must be unequivocally expressed.’ ”
Id. at 58-59, 98 S.Ct. 1670 (internal citations omitted).
Here, the tribe established that no resolution, ordinance or compact including a waiver of immunity was enforceable in 2009 when the plaintiffs claim arose. The resolution (No. C-195-06) passed by the Tribal Council authorized the tribe to enter into, the 2007 compact. While the 2007 compact provided a limited waiver of immunity, our supreme court held the compact invalid. Crist, 999 So.2d at 616. The tribe also provided an affidavit. attesting that no waiver of sovereign immunity was in effect when the claim arose. The plaintiff did not rebut this affidavit, nor could she have done so.
There is no factual dispute. The trial court departed from the essential requirements of law when it denied the tribe’s motion to dismiss. This harm is irreparable if immunity is not given its intended effect.

Petition granted.

WARNER and CONNER, JJ„ concur.

. In fact, the only mention of jurisdiction is this:
Sec. 11-1.12. Consent to jurisdiction.
Any person who applies for a license under this Code, applies for employment in any gaming establishment, enters into any contract or agreement related to gáming, or participates in any gaming on the Tribe's - Reservations or other Indian lands, shall be deemed to consent to the civil jurisdiction of the Tribe, and the Commission. Nothing in this section shall limit the jurisdiction of the Tribe, or the Commission under any circumstances not explicitly contemplated in the section. . .

. Limitations included a shortened six-month period to report a claim, a required submission to the tribe’s insurance carrier, and a limited monetary recovery.

. The tribe argued that a similar case concerning a 2009 incident had recently been dismissed with prejudice in the same court based upon the tribe’s sovereign immunity.